I'm going to wait for counsel to come up and tell me how to pronounce the name. Mr. Oaks, your name I get. Tell me the name of the case. I'm party for Hossain Mosenzadeh. Mosenzadeh? That's the way that he pronounced it. Mosenzadeh. No, I want to pronounce it correctly. Okay. Mosenzadeh v. Lee. Yes. Mr. Oaks, please proceed. May it please the Court, Your Honor. Michael Oaks, and with me is Jeff Bacot for Mr. Mosenzadeh. This is a straightforward case of statutory construction. As the Court is aware, the starting point in every case of statutory construction is the language of the statute itself. And if the intent of Congress is clear, that is the beginning and the end of the matter. The Court must give effect to the unambiguously expressed intent of Congress. When Congress enacted the Patent Term Adjustment Statute, Congress deliberately used broad, indefinite language to ensure that all original patents received enforceable terms that approximated the 17-year terms that were available to them prior to the signing of the GATT Treaty. Now, if we look at the language of 35 U.S.C. 154b1a, it's under the heading Guarantee of Prompt Patent and Trademark Office Responses. And the statute reads, If the issue of an unoriginal patent is delayed due to the failure of the PTO to provide at least, I'm just cutting out the parts that don't matter here, provide at least one of the notifications under Section 132, not later than 14 months after the date on which an application was filed under Section 111, the term of the patent shall be extended one day for each day after the period specified until the action described in such clause is taken. Here, there's no dispute between the parties that an original patent Is this your argument that we should draw a distinction between an and the? That's correct. When discussing the application? Yes. You know, how do we do that? I mean, that's a pretty tenuous argument. And in light of the fact that it would result in some degree of absurdity in that the patentee's own delay could not be used to offset the government's delay because in the patentee delay section, it says the, where this one says and.  Correct. But not holding the applicant accountable for its own delays in that parent under your interpretation of the and and the. So, I mean, it seems like it kind of turns what was the intent of Congress. I don't see the absurdity, and I want to first focus on the and versus the. There's a long body of case law. It is a statutory construction that's been around for hundreds of years and is indefinite. It is to be given its broadest possible construction. It means one or more. This is your position, but so I want to let you, because you haven't gotten to answer my question yet, but so go ahead. There's a long body of case law. We cited it in our brief. And means one or more. It is not limited to the one specific thing. The means the specific thing that was previously referenced. So district courts, federal courts, appeals courts around the country, when they see and, they mean broadest possible meaning. They say that is not ambiguous. That is Congress giving an unambiguous intent that we are to be given the broadest possible meaning. And here the entire intent of the statute is to return patent terms to patent owners. It's not to take it away. It's to return it. Here we've got unambiguous. We've got PTO delay of five years in issuing that first office action when they're required by statute to respond in 14 months. There's no way for a patentee to recover that four-year delay unless that term is restored. And this court held in the Wise case, the goal is to get all original patents about 17 years. Here because of that delay, the patent's only got eight years of enforceable life. Yes, but going back to my point, the problem is that Congress also intended a patentee's delay to offset the government's delay in terms of returning patent term adjustment. And the patentee's delay will be deleted out from, the restriction cuts off that A delay, right? Once that restriction comes out in the parent case, that cuts off the A delay from the parent case. And then the patentee's actions within the divisional patent will be deducted out. What if the patentee had actions in the parent prior to the restriction which caused significant delays? I realize that's not true in this case, but you're asking for a statutory interpretation that will affect lots and lots of cases. So if the patentee did in fact delay in the parent in a way that would normally be used to offset. I don't think that's the case. A, I don't think it will affect a lot of cases because most of the time, almost every time, the patent office will get that restriction out in the first 14 months. It's a one-page office action. So all they do is they say, I mean, it's cited in our brief, but it's a one-page action. They say restrict your claims. You restrict them. That cuts off the potential for any of this delay. As soon as that restriction comes out, this is over. Because of that due-to language, if the issuance is delayed due to the patent office delay, nothing else is going to be due to that patent office delay except for that restriction requirement. So once that restriction requirement comes out, it cuts off. I don't understand why just the restriction requirement. It's also basically any first office action needs to come out in 14 months, right? And so it's not just a restriction requirement. That's true. So any case, regardless of whether it's a restriction case or not in which the PCO doesn't act, and then there's a continuation application filed afterwards. I mean, I feel like your suggestion that it's almost never going to happen isn't correct. It's almost never going to happen exactly like it happened in this case. Well, the patent office will typically get their first office action, whether it's a rejection, whether it's a restriction, out in that first 14 months. This is an unusual case where the patent office delayed for five years in getting that first office action. But that's the whole point of the Patent and Term Adjustment Statute is to get that term back to the patent owners. Because of the patent office delay, there's nothing that the patent owner can do during that period except wait for the patent office to get back to them. So, I mean, it's not the job of this court to rewrite the statute. Congress gave express intent. They used the word, and. This court does the same thing when it construes claim construction. It uses, and is used to mean one or more. And this is sort of a silly example. If I had a basket of apples on the table, and you said, hand me an apple, I would assume that any one of those would satisfy that request. But if you said, hand me the apple, I would say, which apple are you talking about? That's the entire meaning. The only thing is the plain and ordinary meaning of the word, and. And the interesting thing is that when Congress was enacting this bill, the original version of the bill had the application in it, and it actually excluded restriction requirements from a triggering event. Then Congress added in restriction requirements, and they changed the to and. So the plain intent is to broaden this so that we're covering all possible applications. The only real anomaly here is that divisional patents here have way shorter lives than the parent patents, and that's not what was supposed to happen. If this happened pre-gap, all of these divisional patents would have 17-year terms. But now because of the patent office delay, they've got an eight-year term where the parent expires way after the divisionals that were filed three years later. So your argument in response to the government's ability to construe the word application, for example, if they were to say an application means only the application that matures into the patent, and the idea about whether we should give Chevron deference to that construction, your argument would be what? It's absolutely against the plain language of the statute. Congress deliberately chose an. They know what that means because of this long body of case law. An means one or more. And so in the Ringling case, one of the Ringling cases, we said that use of an indefinite article by Congress is plain and unambiguous language by Congress that it can apply to one or more. It is a broadening definition. It's supposed to be given the broadest possible interpretation. Assuming you're putting a lot of weight on that one word, go back to your apple analogy or your hypo. If I asked you to get me an apple, wouldn't it be fair for you to say which one? I would think you didn't care because you just said, hand me an apple. It's a basket of apples. That's the wrong one. You never did ask. Yeah, I would think you would ask me, hand me the apple or hand me the red one. You're pointing to a specific one. There's a little bit of ambiguity in the word apple. I don't find any ambiguity whatsoever. It means one or more. Any application that the delay in that application causes the delay in the issuance. So it's not the universe because of that due to language in the statute. It's any application where the delay by the patent office causes delay in the issuance of an original patent, which we agree. At the very outset, I guess you had also the option to file separate applications for the different claims. That's true. You chose not to. That's true. There's a risk in doing that. There shouldn't be a risk because pre-GAT there was no risk whatsoever and the patent term adjustment fixes that risk by saying delays in any application will give rise to patent term adjustment. So that would force you to take this incredible guess as to how the patent office is going to divide up your claims. It would require you to be perfect every time or you'd lose patent terms. And that is exactly opposite of the express intent of the patent term adjustment statute. The entire goal of that statute, as this court found it in Wyeth's case, is to return all original patents to that approximately 17-year term. Not eight years. Eight years makes no sense. We're trying to get back to the pre-GAT phase as close as we can when in light of patent office delay. That's what we're looking at here. Well, but just to be clear, you didn't... It's not eight years because of patent office delay. The patent office delay was less four years or more. Four years, that's right. It would never get to 17. So, I mean, the rest of that delay was actually your client not filing the divisional application in a timely fashion after the restriction requirement. Your client waited until prosecution of the parent was nearly completed before even then filing divisional. He wanted to do them in series, not in parallel. So he himself caused a lot of the delay, which is what caused it to get to eight years. In fact, more of the delay than the patent office delay. That's true, and we're not seeking to recover that time. That's not covered by the patent term adjustment statute. What is covered by that? Why can't all of that delay be used to offset the patent office delay? Well, because this is a standard prosecution technique because the patent... No, he chose to file in series rather than in parallel. He's lost that life. He's not trying to recover that. That is counted against him. He's not getting that back. Yes, but unfortunately, I understand. Your response to me is a very good one. It is, Judge Moore, if you did that, it would be like double-counting his delay against him. But guess what? That's actually exactly what Congress did. I don't understand why. I think it's not good. But when they count the patentee's own delay that was caused and allow it to offset the PTO delay, they are expressly, in every instance, double-counting because if he caused delay in his own application, we're in a post-GATT world, he loses some of his exclusivity time. He loses a portion of his patent term. And then when we double-count it, which we have to do by the statute, against PTO delay to offset their delay, it's a double whammy for the patentee. I don't think that's fair, but that's what the language unequivocally requires in every single case. So your argument to me is a really good one, except that it is expressly what Congress enacted. Well, Congress said an application. They didn't say the application that gives rise to the patent. So delaying an application that causes the delay of the issuance of an original patent will give rise to patent term. Why won't the applicant's delay in filing the divisional be used to offset the PTO's delay in issuing the first 14-month action? There's nothing in the statute that would require that. No, the PTO is free to delineate the circumstances in which an applicant's behavior... But they haven't done that. Instead, they've said that in the first instance, none of that time counts. But they weren't permitted to do that under the plain language of the statute. I mean, if filing a patent that was ultimately going to be restricted with some kind of bad act, then the parent patent wouldn't get that delay either in issuing the restriction. But they expressly, the patent office agrees, that the parent application still gets that delay period. Okay, let's save the rest of your rebuttal time and hear from the government. Thank you. I'm going to let you say your own name because I don't know your name either. I'm Dana Kersong for the United States. Kersong, okay. Yes. Please proceed. So both the statute and the regulations here make clear that PTA is only available for the application that becomes the patent. We have a system in which one invention is described in one application that becomes one patent. Congress uses the singular application because each patent comes from one application and that's the application you get PTA for. Continuation divisionals, they complain the priority date but they are separate applications. They have separate application numbers, separate fees. They're processed separately. You can grant one, deny the other. PTA is calculated separately. Yes, but here isn't he correct that it says an application was filed under 111 and here we do have an application in this chain in which the PTO did not respond 14 months after the filing. We have an application that was filed under 111A, the parent. PTO didn't respond for five years. Why isn't that good enough on its face? In some sense, it's certainly true that delay in a parent application would carry over to the child. But as the Court has noted, that's not limited to divisionals. It would be true of any continuing application. And in fact, as the Court recently said in Gilead, delay in one application is going to delay everything else before the same examiner. So it's not even clear where that rule ends. I think the best reading of this is that Congress used an application because it's talking about an application under Roman I or an international application under Roman II. And they use the singular because they're preserving this one application, one invention, one patent system. As the Court has pointed out, we would get some very strange results where applicants could launder their delay. They could accumulate a bunch of PTA, but also an application. But PTO did cause him to lose four years of his patent term here by not acting. PTO received an application and did nothing for five years. That's a really long time. Why should any of the claims that he sought not be restored? Well, this is a situation that the applicant has control over. The applicant can file a broad application, but there are trade-offs with doing that. That's a strategic choice. And you risk losing patent time when you do that. The rule that we're talking about here, the statutory interpretation, it's going to apply in every case. It's going to apply... You say you risk losing patent term when you do that. You only risk losing patent term when you do that if the PTO delays five years. I mean, if the PTO had moved forward promptly, then they could have filed their divisional the next day and they would have lost no time. Zero time would be lost. Well, restriction requirements, by definition, come into play in cases where you have an overly broad application that imposes a serious burden on the examiner. So we're talking about situations in which the applicant could have filed multiple inventions because each invention is supposed to be in a separate application. That's what the statute says. And instead, they file a broad application. It takes a long time for the PTO to handle it. There are strategic reasons to file broad applications, but there are trade-offs with that choice. Now, the idea that the divisional application should have as long a patent term as the original, the statute doesn't bear that out. The divisional is basically always going to be shorter because it's claiming that earlier priority date is from the time when the earlier application was filed. Well, so it's going to be shorter by virtue of them having to file a divisional, which introduces just a slight bit of delay in the process if they had done it promptly, immediately upon restriction. But it's not going to be shorter by five years. I mean, you all are responsible for the five-year delay. In some sense, that's true. If you look at time... In what sense is it not true that you're responsible for the five-year delay? He could have filed multiple applications. He could have put each invention in a separate application, as the statute requires, and then he would have gotten, if it took five years, he would have gotten the five years on every application. But this is a system in which, not just in this particular case, and maybe these facts are sympathetic, but it would apply to every continuing application. And they're reading it. The language of the statute, it seems like it would also apply to other types of A and C delay. So we have a situation where... You rejected this PTA application, or the government did, citing primarily 1.704.13, right? Yes. Example 13, which says, Further prosecution via a continuing application in which case the period set forth in 1.703 shall not include any period prior to the actual filing date of the application that results in the patent. Under what gap-filling authority did the PTO enact this regulation? 1.704, as this Court recently recognized in Gilead, we get Chevron deference for that statute. It's a very broad delegation. I'm not asking you to interpret it. That's what your Chevron deference is. I said, under what statutory section did you get gap-filling authority to create that substantive provision? So 154.b.2.3 gives the director the authority to prescribe regulations establishing the circumstances, so the director gets to define the circumstances, that constitute a failure of the applicant to engage in reasonable efforts to conclude the processing or examination of the application.  So you have the authority to establish circumstances that constitute a failure of the applicant to move forward. Okay, and so what is the circumstance in 13 that constitutes a failure of the application of the applicant to move forward? To conclude processing of the application. You're not engaged in anything to conclude processing of an application that you have not yet filed. This reading was completely uncontroversial at the time. No, no, no. You said to me your gap-filling authority comes from the fact that you have the right to establish circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing an application. The processing of prosecution of the application. That's the language in B2C-I, which sets out this sort of larger thing. And then Romans 3 says... That's what I just read. Right. I don't understand. You have the authority to constitute a failure of circumstances. You can enumerate them as you did, 1 through 12. When an applicant has failed to engage in reasonable efforts to conclude processing an examination of an application. You're saying when they file a continuation, they've done that, right? Isn't that what 13 says? When they file a continuation, they are failing to engage in reasonable efforts to process the examination. Yes. Okay. So that is a circumstance that you're entitled, absolutely gap-filling authority to create. Now, what happens under this statute when you've identified a circumstance in which the applicant is failing to process the application? What does the statute require to happen? You don't get to decide. The PTO doesn't get to decide what happens, does it? Did the Congress give the PTO the authority to describe the circumstances and decide what penalty should attach for each of those circumstances? Did Congress give the PTO that authority? Generally, it shall be... I want to be clear. Did Congress give the PTO the authority to both describe the circumstances and describe what penalty should assess based on those circumstances? So I want to separate... Yes or no. Not under 154b2c Roman III. There is another rule-making authority here. Hold on. So Congress did not give the PTO the authority to decide what penalty should attach. And, in fact, it expressly said what penalty should attach, did it not, in 154c Roman I? Right. Yes or no? Yes. The time shall be reduced. Reduced. So Congress didn't say, you can decide what penalty. It says, you can decide what circumstances give rise to a penalty. And here, in fact, is clearly what the penalty will be. You will reduce the number of days. Correct? That's right. Now, this provision is framed a little bit differently because the statutory text and our other regulations, 1702 and 703, which also get deference, provide that this doesn't count at all. And PTO made clear... But where did you get the authority to decide that it doesn't count at all when Congress has expressly said it will cause a reduction in the period of PTO delay? Where did you get the authority to say, no, no, it won't just cause a reduction, it will eliminate all PTOs? So the larger statutory scheme provides that it isn't going to count at all. 1.702 and 703 provide that it isn't going to count at all. This is a belt and suspenders that the comments at the time said, everybody knows this doesn't count at all. And PTO said, yes, we're just putting this in here to remind applicants. Yes, so you don't get to put into regulation things that aren't something you have authority to do via gap-filling. And I'm not suggesting that you don't have authority for 1.702 or 1.703 under the guise of we are interpreting the word application and are entitled to Chevron deference to do so. But that's not what you argued at any point in your brief. What you argued to me in your brief is that your authority for number 13 came from your gap-filling authority on 154C3i. That's what you argued in your brief and that's what you've argued to me just now. And I think it was pretty clearly established that it didn't. So you don't have the gap-filling authority to assess the penalty. You only have the gap-filling authority from a substantive standpoint to define the circumstances that give rise, not what should happen in those circumstances. So I respectfully disagree on both counts, Your Honor. Our brief did also talk about 1.702 and 1.703 and the statutory scheme generally. Additionally, so we're not defining the penalty, but we are saying what time is the applicant delayed, right? When is the applicant failing to engage in reasonable efforts? And the answer to that is any time he hasn't yet filed the application, he is not engaged in reasonable efforts to complete processing of that application. So all of that time is time when he is not engaged in reasonable efforts to complete processing and all of that time comes out. That is completely consistent with the statutory grant. It's also, of course, consistent with the statute and the use of singular and application and avoids the very strange results that we would otherwise get. If there are no further questions. Okay, thank you. Mr. Oaks, you have a little time left. Thank you, Your Honor. I think you've hit on the key point and that is this isn't just a little bit different than the other regulations within 1.704. It's completely different because it just takes away PTO in the first instance and Congress did not grant the authority to that. The statute is clear. You look at the plain language of the statute. Delay in an application gives rise to term adjustment for original patents, including divisionals. Nothing in the statute indicates any intent to treat divisionals differently from parent patent applications. They use the broad language and that broad language was intentional. If you took this to the extreme, if the patent office delayed 13 years instead of five years, these patents would have come out with zero years of life and there is no recourse for patent holders. That can't be what Congress intended. Congress meant to fix the problems of patent office delay. The patent office can't just sit on an application indefinitely with no repercussions and with no recourse for patent owners. The entire intent of the patent term adjustment statute was to return term to patent owners for patent office delay. This is not a patent. When I look at the portion of the PTA statute that relates to the aid delays, it says that the guarantee of a prompt patent with free response goes on with references to an original patent. Correct. What is that talking about? An original patent and it's in a footnote of the government's brief as well and they agree with us here. An original patent is a parent patent, a divisional patent, or a continuation patent. It is an original. An original. All three of those qualify as an original patent. The one thing that does not qualify as an original patent is a reissued patent. That's not an original patent. That comes out of the patent office a second time. But an original patent includes it. So if we include all three, that doesn't affect later on the definition of the word and. Do you want us to restrict that to just a particular application? I'm sorry. Which use of and? Where the statute goes on, so the date on which an and. An application. No, any application. Any application where the delay in that application in issuing a restriction delays the issuance of the original patent that we talked about earlier and is open-ended. So if you have a situation where you file an application and that results in divisional applications and later on a continuation in part applications, are you saying all of those are original applications? No, no. So because the due-to language, the due-to language is the limiting factor here. So the patent office delay, the due-to language is what restricts it. The due-to would carry over to that divisional, but it's not going to carry over to a continuation in part off of that divisional because that would not be delayed due to the act of the patent office. Okay, thank you, Mr. Oaks. The case is taken under submission.